UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| A.S., <br><br>         Plaintiff, <br><br>     -against- <br><br> VICKI BEEN, as Commissioner for the New York City Department of Housing Preservation and Development, and NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, <br><br>         Defendants. | **COMPLAINT** |

## PRELIMINARY STATEMENT

1.      Plaintiff, A.S., brings this action pursuant to the Fourteenth Amendment to the U.S. Constitution, the Fair Housing Act, and the New York City Human Rights Law seeking declaratory and injunctive relief and damages.

2.      Plaintiff is a 55 year-old survivor of domestic violence who lives in an apartment which had been subsidized by a federal Section 8 voucher, administered by Defendants.

3.      In situations involving criminal domestic violence, federal law allows for a "bifurcation" of Section 8 vouchers. Bifurcation allows a transfer of a Section 8 voucher from the batterer's name to the survivor's. The purpose of bifurcation is to ensure that survivors of domestic violence can afford to remain in their apartments and to prevent survivors from facing homelessness as a consequence of ending an abusive relationship.

4.      After her batterer was arrested, Plaintiff requested precisely this bifurcation of the Section 8 voucher so that she could remain in her home while excluding her batterer through an Order of Protection.

5.      Defendants held a hearing on the issue, allowing Plaintiff's abuser to testify but excluding Plaintiff from the proceeding entirely.

6.      Upon information and belief, the exclusion of survivors of domestic violence from Section 8 bifurcation hearings constitutes Defendants' regular policy, pattern and practice.

7.      As a consequence of Plaintiff's exclusion from the bifurcation hearing, Defendants denied Plaintiff's request to obtain the Section 8 voucher in question.

8.      As a result of Defendants' discriminatory actions as well as the violation of Plaintiff's right to due process, Plaintiff can no longer afford to remain in her apartment and is at risk of homelessness.

9.      By failing to provide an opportunity to be heard, Defendants have deprived Plaintiff of her due process rights, have discriminated against her on the basis of her sex, and have acted in a manner that was arbitrary, capricious, and contrary to federal and local law.

## JURISDICTION AND VENUE

10.     This court has jurisdiction over Plaintiff's Fourth and Fourteenth Amendment claims pursuant to 42 USC §§ 1983 and 1988 and 28 U.S.C. §1331.

11.     This court has supplemental jurisdiction over Plaintiff's City law claims pursuant to 28 U.S.C. § 1367.

12.     Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 *et seq.*

13.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b). The Southern District of New York is the judicial district where the apartment in question is located, where Defendants have a principal place of business, and where the facts giving rise to the instant claims occurred.

2

## PARTIES

14.     Plaintiff A.S. ("Ms. A.S." or "Plaintiff") is a 55-year-old domestic violence survivor.  She currently resides with her adult daughter in an apartment on West 37th Street in Manhattan.

15.     Defendant VICKI BEEN is the Commissioner of the New York City Department of Housing Preservation and Development.

16.     Defendant NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT is an administrative department of the City of New York with its principal place of business at 100 Gold Street, New York, New York 10038.

17.     Defendant VICKI BEEN, in her official capacity, and Defendant NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT (collectively "HPD") have as their mission the promotion of quality housing and diverse neighborhoods. HPD accomplishes this mission through loan and development programs for new affordable housing, preserves of the affordability of existing housing stock, and enforces housing quality standards.

18.     In addition to these and other duties, HPD also administers a Section 8 program, known as the Housing Choice Voucher Program. The Section 8 program provides federal subsidies to assist eligible low-income families in renting affordable housing. Families participating in the Section 8 program pay a reasonable share of their income toward rent, which is typically 30% of the household's total household income. HPD pays the remaining rent directly to the landlord, within specified limits.

## STATUTORY AND REGULATORY SCHEME

### Title VI of the Violence Against Women Act, amended as Violence Against Women Reauthorization Act of 2013

19.     In 2013, Congress reauthorized the Violence Against Women Act ("VAWA"), recognizing that survivors of domestic violence often face housing discrimination and risk homelessness when seeking to leave abusive situations. Congress further recognized that survivors were often evicted after repeated calls to the police for domestic violence incidents and disturbances to other tenants.  These victims faced "double victimization" by their abusers and their landlords.

20.     Title VI of the Violence Against Women Reauthorization Act of 2013 (hereafter "VAWA"), Pub. L. No. 113-4, 127 Stat. 54 (March 7, 2013), states that:

> No person may deny assistance, tenancy, or occupancy rights to housing assisted under a covered housing program to a tenant solely on the basis of criminal activity directly relating to domestic violence, dating violence, sexual assault, or stalking that is engaged in by a member of the household of the tenant or any guest or other person under the control of the tenant, if the tenant or an affiliated individual of the tenant is the victim or threatened victim of such domestic violence, dating violence, sexual assault, or stalking.

42 USCA § 14043e–11(b)(3)(A).

21.     VAWA allows Public Housing Authorities such as HPD to "bifurcate" Section 8 benefits. Specifically VAWA states that

> [a] housing program may bifurcate a lease for the housing in order to evict, remove, or terminate assistance to any individual who is a tenant or lawful occupant of the housing and who engages in criminal activity directly relating to domestic violence, dating violence, sexual assault, or stalking against an affiliated individual or other individual, without evicting, removing, terminating assistance to, or otherwise penalizing a victim of such criminal activity who is also a tenant or lawful occupant of the housing.
>
> [ . . .]

4

> If public housing agency or owner or manager of housing assisted under a covered housing program evicts, removes, or terminates assistance to an individual under clause (i), and the individual is the sole tenant eligible to receive assistance under a covered housing program, the public housing agency or owner or manager of housing assisted under the covered housing program shall provide any remaining tenant an opportunity to establish eligibility for the covered housing program.

42 USCA § 14043e–11(b)(3)(B)(i) – (B)(ii).

**Implementation of VAWA by HPD's Housing Choice Voucher Administrative Plan**

22.     HPD has promulgated a Housing Choice Voucher Administrative Plan that must conform to the purposes and strictures of a variety of federally mandated tenant protections, including VAWA. *See* Housing Choice Voucher (Section 8) Administrative Plan, April 15, 2015 ("HCV Administrative Plan").

23.     According to the HCV Administrative Plan "HPD administers the Housing Choice Voucher program in conformance with 24 CFR Part 5, 903, 982 and 985, the Housing Act of 1937, the Fair Housing Act, Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973 and its subsequent amendments, and Title II of the Americans with Disabilities Act. HPD affirmatively furthers fair housing in the administration of the HCV program." HCV Administrative Plan § 1.1.

24.     Furthermore, pursuant to the HVC Administrative Plan, HPD may exercise its authority to "terminate assistance to any individual who is a tenant or lawful occupant and who engages in criminal acts of physical violence against family members or others, without evicting, removing, terminating assistance to, or otherwise penalizing the victim of such violence who is also a tenant or lawful occupant." HCV Administrative Plan § 2.5.1.

25.     Survivors of domestic violence are therefore encouraged by VAWA to come

forward without fear of losing benefits inasmuch as the Administrative Plan states that "[i]f the victim submits the certification and supporting documentation within the required timeframe, or any approved extension period, HPD will terminate or deny the offender's assistance." HCV Administrative Plan § 2.5.3.

26.     Additionally, the Administrative Plan specifically states that, when deciding whom to give the subsidy to in the event of a family breakup, "HPD will consider the role of domestic violence in the family breakup and follow [VAWA] policy when determining who will retain the subsidy." HCV Administrative Plan § 5.1.4.

27.     Upon information and belief, when HPD receives information regarding alleged domestic violence, HPD commences a "bifurcation" proceeding.

28.     Contrary to its name, the bifurcation process does not split the subsidy into two parts. Rather, HPD holds a hearing that determines who should get the voucher.

29.     The potential abuser is given due process rights to contest the bifurcation. HPD will provide the abuser with notice and an opportunity to be heard. At the hearing, the abuser may have an attorney or other representative present. In addition, the abuser may review HPD's file at the hearing, or upon request, prior to the hearing.

30.     Upon information and belief, it is the policy and practice of Defendants not to formally notify the survivor of domestic violence of the hearing or to allow the survivor an opportunity to be heard at the hearing. Rather, Defendants rely entirely upon the written documentation that the domestic violence survivor submitted as part of the bifurcation request. The abuser is afforded an opportunity to speak; the survivor is not.

## Title VIII of the Civil Rights Act of 1968, as amended
## by the Fair Housing Amendments Act of 1988

31.     Title VIII of the Civil Rights Act of 1968, also known as the Fair Housing Act (hereinafter "FHA"), as amended by the Fair Housing Amendments Act of 1988 (hereinafter "FHAA"), 42 U.S.C. § 3601 *et seq.*, states that "it shall be unlawful . . . [t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, *or otherwise make unavailable or deny*, a dwelling to any person because of … sex." 42 U.S.C. §3604 (a).  [emphasis added]

32.     The Section further states that it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of  . . .  sex." 42 U.S.C. § 3604 (b). Prohibited actions include "Evicting tenants because of their . . . sex." 24 C.F.R. 100.60 (b)(5).

33.     Title VIII further prohibits interference with any person in the exercise or enjoyment of rights guaranteed under, *inter alia*, 42 U.S.C. § 3604. 42 U.S.C. §3617.

## The New York City Human Rights Law

34.     The New York City Human Rights Law ("City HRL"), N.Y.C. Admin. Code § 8-101 *et seq.*, makes it an unlawful practice to discriminate against individuals in housing on the basis of sex. N.Y.C. Admin. Code § 8-107(5).

35.     The City HRL prohibits discrimination in public accommodations and provides that:

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of the actual or perceived … gender . . . to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof.

N.Y.C. Admin. Code § 8-107(4)(a).

36.     Defendant HPD is a "public accommodation" within the meaning of the HRL, as "public accommodation" is defined to include "providers … of goods, services, facilities, accommodations, advantages or privileges of any kind and places … where goods, services, facilities, accommodations, advantages or privileges of any kind are extended, offered, sold or otherwise made available." N.Y.C. Admin. Code 8-102(9).

37.     The HRL further states that "[i]t shall be an unlawful discriminatory practice for any person to . . . interfere with . . . or attempt to . . . interfere with any person in the exercise or enjoyment of . . . any right granted or protected" under the HRL. N.Y.C. Admin. Code § 8-107(19).

## STATEMENT OF FACTS

38.     Plaintiff is a 55-year-old domestic violence survivor with very limited English proficiency. Plaintiff's native language is Cantonese. She resides with her adult daughter in an apartment on West 37th Street in Manhattan.

39.     In September 2012, Plaintiff married her now-estranged husband and moved into his apartment where he received a Section 8 subsidy under the HPD Housing Choice Voucher Program.

40.     Soon after getting married, Plaintiff began to suffer various incidents of domestic violence perpetrated by her husband, including physical assaults and threats to her life.

41.     Due to her fear of reprisals and unfamiliarity with her legal protections, Plaintiff did not initially report these incidents to authorities.

42.     However, on February 10, 2014, Plaintiff's husband attempted to rape her. He climbed on top of her, hit her, grabbed her arm, and threatened to kill her if she went to the police. Plaintiff was able to push him off and flee the apartment.

8

43.     The next day, Plaintiff, fearful of her life, fled to a shelter at the New York Asian Women's Center.  She reported the incident to the police and sought treatment at Beth Israel Hospital. She also obtained an order of protection against her husband, effective through August 8, 2014.

44.     In May 2014, Plaintiff initiated steps to remove her husband from the Section 8 household composition, and to bifurcate the Section 8 voucher so it could be placed under Plaintiff's name, based upon the February 10, 2014 incident. These steps included filling out a HUD-91066 Form.

45.     The HUD-91066 Form is the form prescribed under VAWA to "protect qualified tenants and family members of tenants who are victims of domestic violence . . . from being evicted or terminated from housing assistance based on acts of such violence against them."

46.     On July 28, 2014 Plaintiff obtained a new order of protection against her husband, effective through January 27, 2015.

47.     On or about August 14, 2014, Plaintiff left the shelter and returned to her apartment. Although her husband initially refused to obey the order of protection and leave the apartment, he did so after Plaintiff threatened to call the police.

48.     Despite having submitted the requisite forms to HPD in May 2014, Plaintiff never heard back regarding who would obtain the subsidy.

49.     Thus, on December 5, 2014, eager to ensure that she could keep the subsidy and remain in her apartment, Plaintiff once again filed substantially the same forms with HPD, but this time she included additional supporting documentation.

50.     On January 14, 2015, Plaintiff met with an HPD representative to discuss the bifurcation of the Section 8 voucher. At that meeting, HPD explained to Plaintiff that HPD

9

would make a determination regarding whether she or her husband would get the Section 8 subsidy.

51.     Despite the process being called "bifurcation," an HPD employee told Plaintiff that HPD "does not split Section 8 vouchers."

52.     The representative further explained that if HPD decided that Plaintiff should get the subsidy, her husband would have a right to challenge that decision.

53.     On March 13, 2015, Plaintiff obtained another order of protection against her husband, effective through September 12, 2015.

54.     In early May 2015, Plaintiff met with attorneys from Sanctuary for Families to obtain information and guidance regarding a divorce.

55.     On June 17, 2015, Plaintiff's husband resolved the criminal matter pending against him as a result of his abuse of Plaintiff by pleading guilty to disorderly conduct. On the same date, Plaintiff also served her husband with divorce papers.

56.     On June 18, 2015, Plaintiff obtained a final order of protection against her husband, effective through June 16, 2017.

57.     By way of a letter dated June 24, 2015, HPD commenced bifurcating the Section 8 voucher in question and issued a Notice of Section 8 Rent Subsidy Termination to Plaintiff's batterer, notifying him that he could contest the bifurcation and request a hearing, have an attorney represent him and be present at the hearing, and review the file prior to the hearing.

58.     Plaintiff did not receive any such notice.

59.     Plaintiff's husband challenged the termination, and thereafter, HPD scheduled a hearing on the issue of who should receive the Section 8 voucher.

60.     As noted above, Sanctuary for Families was assisting Plaintiff to obtain a divorce. To this end, Kevitt Adler, a staff attorney from Sanctuary for Families made certain contacts with other agencies such as the Family Justice Center and HPD.

61.     Thus in the course of his investigation, Mr. Adler had occasion to contact HPD to inquire about the status of the Section 8 subsidy.

62.     HPD, rather than sending any kind of formal notice to Plaintiff about the hearing, instead sent an email to Mr. Adler explaining that a termination hearing would take place.

63.     When Mr. Adler asked whether Plaintiff should provide an affidavit for the hearing or come in person to testify, HDP responded "Thank you, but no, the hearing will be based on the documents we already have in the file, which are fairly extensive."

64.     On August 13, 2015, HPD held a hearing on the issue of who should receive the Section 8 subsidy.

65.     On January 27, 2016, Mr. Adler received another email from HPD stating that "HPD's hearing officer issued a decision and the housing choice voucher remains with [Plaintiff's husband]. I am sure you are aware that the Criminal Court for the County of New York dismissed the criminal charges against [Plaintiff's husband] and sealed all records and documents related to those charges, pursuant to the CPL Section 160.50."

66.     At all times, it was clear that neither Mr. Adler nor Sanctuary for Families were Plaintiff's attorneys for all purposes. HPD could not have reasonably believed that Mr. Adler was Plaintiff's agent such that informal notice to him would count as formal notice to her.

67.     Rather, it is in keeping with the experience of Sanctuary for Families, that HPD simply does not allow the victim to testify or present documentary evidence at the termination hearing or, for that matter, even receive notice of when the termination hearing will be held.

68.     Because Plaintiff was not given an opportunity to provide an affidavit, testify, or cross-examine Plaintiff's batterer at the hearing, HPD mischaracterized the resolution of the criminal matter against Plaintiff's batterer, mistakenly stating that the criminal charges were dismissed rather than settled with a plea to a charge of disorderly conduct.

69.     In addition, if Plaintiff had been afforded notice and an opportunity to be heard, she would have been able to present facts regarding the underlying pattern of serious abuse, including the fact that her husband attempted to rape her and threatened to kill her.

70.     However, Plaintiff was never able to present these facts at the hearing because she was never afforded an opportunity to be heard or to contest statements made by her abuser.

71.     The only official notice concerning the termination of the Section 8 subsidy that Plaintiff ever received from Defendant came by way of a letter dated February 23, 2016. That letter blandly stated that "the Section 8 rental subsidy HPD pays on behalf of [Plaintiff's husband] . . . will end."

72.     The aforementioned letter provided no means of appealing the decision.

73.     To date, Plaintiff has not even received a copy of the hearing officer's decision.

74.     Upon information and belief, it is HPD's practice to hold hearings on Section 8 bifurcation in domestic violence situations wherein only the batterer is permitted to be heard, even though these proceedings will determine the victim's right to an invaluable federal housing subsidy.

75.     Statistics show that women are overwhelmingly the victims of domestic violence. An estimated 1.3 million women are the victims of assault by an intimate partner each year, and about 1 in 4 women will experience intimate partner violence in their lifetimes. *See*, Centers for

Disease Control and Prevention, National Center for Injury Prevention and Control, *Costs of Intimate Partner Violence Against Women in the United States* (2003).

76.     The U.S. Bureau of Justice Statistics found that 85% of victims of domestic violence are women.  *See*, U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Statistics Crime Data Brief, *Intimate Partner Violence, 1993-2001* (2003).

77.     In 2009, women were about five times as likely as men to experience domestic violence. *See*, Jennifer R. Truman & Michael R. Rand, U.S. Department of Justice, *Criminal Victimization, 2009* (2010).

78.     These statistics show that discrimination against victims of domestic violence constitutes discrimination against women.

79.     These statistics further show that discrimination against victims of domestic violence has a disparate impact on women. Although Defendants were aware that the vast majority of domestic violence survivors are women, Defendants nonetheless deliberately adopted a policy, pattern, and practice that excludes survivors of domestic violence from VAWA Section 8 bifurcation hearings, failing to provide them with proper notice or an opportunity to be heard.

80.     Defendants adopted such a practice despite the fact that they knew it would have a vastly disproportionate effect on women.

81.     As a result of Defendants' policy, pattern, and practice of discriminating against women and denying them proper due process of law, Plaintiff now faces homelessness as her abuser prevailed in a hearing wherein HPD adjudicated her rights to a Section 8 subsidy without giving her proper notice and an opportunity to be heard.

## CAUSES OF ACTION

### First Cause of Action: Violation of Due Process

82.    Plaintiff re-alleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

83.    42 U.S.C. § 1983 creates a cause of action on behalf of "any citizen of the United States or other person within the jurisdiction thereof" who has been deprived of "any rights, privileges or immunities secured by the Constitution and laws" against any person acting "under color of any statute, ordinance, regulation or usage."

84.    Defendants are "persons" acting "under color" of City and State law within the meaning of 42 U.S.C. § 1983.

85.    Plaintiff has a property interest in the Section 8 subsidy in question.

86.    Plaintiff was deprived of this property interest without sufficient notice or a chance to be heard. Providing Plaintiff with a proper, formal notice addressed to her would not have constituted a substantial burden for Defendants, as such notice was given to Plaintiff's abuser, who was given an opportunity to be heard.

87.    Providing Plaintiff with a chance to provide an affidavit, to testify, and/or to cross examine her abuser at the bifurcation hearing would not have constituted a substantial burden for Defendants, as Defendants allowed Plaintiff's abuser an opportunity to testify and be heard.

88.    Defendants have a pattern and practice of failing to afford victims of domestic violence an opportunity to participate in hearings in which their rights will be determined.

89.    Defendants have thus deprived Plaintiff of a property interest without due process of law, in violation of the 14th Amendment to the United States Constitution.

90.     As a direct and proximate result of Defendants' acts and omissions complained of herein, Plaintiff has suffered and continues to suffer severe emotional distress and damages.

**Second Cause of Action:**
**Violations of Title VIII of the Civil Rights Act (Fair Housing Act) under**
**42 U.S.C. §3604(a) – Disparate Treatment**

91.     Plaintiff re-alleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

92.     Plaintiff is a woman and a survivor of domestic violence.

93.     Defendants' policy and practice of offering an opportunity to be heard only to batterers and not survivors of domestic violence were made with knowledge of and/or reckless indifference to the fact that such policy and practice would primarily disadvantage women.

94.     Defendants were on notice of the fact that the vast majority of domestic violence survivors are women, and thus Defendants were on notice that any policy and/or practice which disproportionately disadvantaged survivors of domestic violence would disproportionately disadvantage women.

95.     Defendants nonetheless implemented the policy and practice complained of herein with full knowledge of the foreseeable discrimination against women which would result.

96.     Defendants' discriminatory policies and actions resulted in the termination of the subsidy for Plaintiff's apartment and the award of the Section 8 subsidy to Plaintiff's abuser without meaningful participation from Plaintiff.

97.     Defendants' actions constitute discrimination against the Plaintiff on the basis of sex and gender contrary to the provisions of the Fair Housing Act.

**Third Cause of Action: Violations of Title VIII of the Civil Rights Act (Fair Housing Act) under 42 U.S.C. §3604(b) – Disparate Impact**

98.     Plaintiff re-alleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

99.     Plaintiff is a woman and a survivor of domestic violence.

100.    As stated above, statistics show that women are overwhelmingly the victims of domestic violence.

101.    As a matter of policy, pattern, and practice, Defendant do not notify domestic violence survivors of when hearings will take place and do not provide a chance for domestic violence survivors to be heard.

102.    Defendants' policy and practice thus has a predictable disparate impact on women.

103.    Defendants' discriminatory policies and actions resulted in the termination of the subsidy for Plaintiff's apartment and the award of the Section 8 subsidy to Plaintiff's abuser without meaningful participation from Plaintiff.

104.    Defendants' actions constitute discrimination against the Plaintiff on the basis of gender contrary to the provisions of the Fair Housing Act.

**Fourth Cause of Action: Violations of New York City Human Rights Law – Disparate Treatment**

105.    Plaintiff re-alleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

106.    Plaintiff re-alleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

107.    Plaintiff is a woman and a survivor of domestic violence.

16

108.     Defendants' policy and practice of offering an opportunity to be heard only to batterers and not survivors of domestic violence were made with knowledge of and/or reckless indifference to the fact that such policy and practice would primarily disadvantage women.

109.     Defendants were on notice of the fact that the vast majority of domestic violence survivors are women, and thus that any policy and/or practice which disproportionately disadvantages survivors of domestic violence would disproportionately disadvantage women.

110.     Defendants nonetheless implemented the policy and practice complained of herein with full knowledge of the foreseeable discrimination against women which would result.

111.     Defendants' discriminatory policies and actions resulted in the termination of the subsidy for Plaintiff's apartment and the award of the Section 8 subsidy to Plaintiff's abuser without meaningful participation from Plaintiff.

112.     This constitutes discrimination against the Plaintiff on the basis of gender contrary to the New York City Human Rights Law.

### Fifth Cause of Action: Violations of New York City Human Rights Law –Disparate Impact

113.     Plaintiff re-alleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

114.     Plaintiff re-alleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

115.     Plaintiff is a woman and a survivor of domestic violence.

116.     As stated above, statistics show that women are overwhelmingly the victims of domestic violence. As a matter of policy, pattern, and practice, Defendants do not notify domestic violence survivors of when hearings will take place and do not provide a chance for domestic violence survivors to be heard.

117.    Defendants' policy and practice has a predictable disparate impact on women.

118.    Defendants' discriminatory policies and actions resulted in the termination of the subsidy for Plaintiff's apartment and the award of the Section 8 subsidy to Plaintiff's abuser without meaningful participation from Plaintiff.

119.    This constitutes discrimination against the Plaintiff on the basis of gender contrary to the New York City Human Rights Law.


**Sixth Cause of Action: Arbitrary and Capricious Conduct**

120.    Defendants' determination to terminate Plaintiff's Section 8 subsidy was arbitrary and capricious, abuse of discretion, and in violation of lawful procedure.

121.    HPD erred in making a determination without the benefit of Plaintiff's testimony or even Plaintiff's presence, and based its determination on erroneous findings of fact.

122.    A judgment should be entered by this Court annulling Defendants' determination and replacing it with a determination continuing Plaintiff's Section 8 subsidy at the subject premises.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff requests that this Court:

(1)    Enter a final judgment declaring that Defendants violated:

      a.    Plaintiff's right to due process under the Constitution of the United States;

      b.    Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 *et seq.*, and its implementing regulations;

      c.    The New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, and its implementing regulations;

18

      d.      Lawful administrative procedures, and constituted an abuse of discretion under State law.

(2)      Enter final, mandatory injunctive relief vacating the determination of Defendant's hearing officer and requiring Defendants to immediately issue the appropriate Section 8 voucher to Plaintiff, or in the alternative, schedule a new hearing at which Plaintiff will have an opportunity to be heard;

(3)      Enter a final judgment awarding Plaintiff actual, compensatory, and nominal damages for injuries and expenses incurred as a result of the preceding violations;

(4)      Allow Plaintiff reasonable attorney's fees, costs and disbursements pursuant to 42 U.S.C. §§ 1988 and 3613, and N.Y.C. Admin. Code § 8-502; and

(5)      Grant such other and further relief as this Court may deem just and proper.


Dated: June 1, 2016
      New York, NY


| | |
|---|---|
| ___/s Shantonu Basu_____ | ____/s Kevitt Adler_____ |
| Manhattan Legal Services | Sanctuary for Families |
| 1 West 125 Street, 2nd Floor | Center for Battered Women's Legal Serv |
| New York, NY 10027 | 30 Wall Street, 8th Floor |
| (646) 442-3100 | New York, NY 10005 |
| Sbasu@lsnyc.org | (212) 349-6009 x-348 |
| Attorneys for Plaintiff | KAdler@sffny.org |
| by: Shantonu Basu, Esq. | Co-Counsel for Plaintiff |
| | by: Kevitt Adler, Esq. |